Frye *v.* Essry.

---

# MAY TERM, 1795.

## BENJAMIN FRYE *v.* JOHN ESSRY.

### *In Chancery.*

The complainant, on the 29th day of May, 1780, made the following entry with the county surveyor, to-wit:

"Benjamin Frye, assignee, etc., enters 1,000 acres upon treasury warrant; beginning at the Long lick, on the east side of Long lick run, and to extend up and down the run, including an ash cabin on the left hand of a buffalo road from Long lick to Rogers' station, and a spring on the right hand of the road, and about three-quarters of a mile from said cabin, and a tree near said spring, marked R S, and another near the cabin R S, 1776, July 4, built by Swaney and Pierman, and to extend north-east for quantity.

The word south made east the 29th May, 1780. The word south made north the 31st of May, 1780."

And having surveyed the same in the manner described on the connected plat, obtained a patent therefor.

Jacob Myers, on the 13th day of May, 1780, made the following entry with the county surveyor, to-wit:

"Jacob Myers enters 400 acres, part of a treasury warrant, about six miles from Bullitt's lick, on the south side of Salt river, to include a cabin and some cleared land, and a spring running a south-east course, and a beech tree marked I R."

And having surveyed the same in the manner described on the connected plat, and obtained a patent, sold the said 400 acres of land to Adam Shepherd, who sold 235 acres, part thereof, to the defendant, to whom the said Jacob Myers made a conveyance for that quantity.

The annexed connected plat No. 25, was returned in this cause, of which the following is an explanation:

E F G H I, complainant's survey of 1,000 acres. K L C D, the defendant's survey of 235 acres, part of 400 acres entered by Jacob Myers, according to his deed. A B C D, 'the interference, containing 159½ acres. M N O P, the defendant's survey, laid down

by order of the complainant, as he thinks agreeebly to entry. 11 12 13 14, Jacob Myers' [entry of 400 acres agreeably to the decree of the court. 1, the Long lick. 4 to 5, the old Buffalo road. 2, the ash cabin. 3, the spring, cabin, and beech tree marked R S, called for in the complainant's entry. 6, the sinking spring and elm. 7, the improvement. 8, a beech stump in the defendant's meadow, standing 34 poles from his house north 30 west. 9, the defendant's house. 10, a spring running south 50 east from the head. The water course is Long lick creek, or run.

It was agreed by the parties that the distance from Bullitt's lick was about six miles.

The parties agreed to waive the inquiry of facts by a jury, and submitted the question of fact, as well as of law to the court.

Several witnesses were examined to prove the objects called for by the two entries.

MURRAY and HUGHES for the complainant.

NICHOLAS and BRECKENRIDGE for the defendant.

It was contended by the counsel for the complainant: That it was not material to inquire whether the complainant's entry was surveyed exactly right or not. For it would be admitted that, let his entry be laid off in any form including all the objects called for, which are established by the testimony, and running northeast for quantity, it would include all the land in dispute.

The entry of the defendant, they contended, was vague and uncertain. It called for a distance from Bullitt's lick, on the south side of Salt river, without giving any course.

But admitting the place claimed was the one intended, and was properly described, the survey was improperly made.

The beech tree marked I R, could not be considered as sufficiently identified, and the spring running a south-east course, was too far from the clearing or improvement, to be considered in ascertaining the mode in which the survey ought to be made. It would be sufficient at all events to include it.

It was contended the survey ought to have been in a square form, the lines running to the cardinal points; and the cabin and cleared land in the centre.

For the defendant, it was urged that the entry of the complainant ought to be taken as it stood before the marginal notes were made.

The law directed that entries should be made by the surveyor in a book to be kept for that purpose, in which there should be

kept no blank leaves, or spaces between the different entries. Chan. Rev. 95, sec. 3.

The intention of the legislature was certainly to prevent entries being altered.

And if entries could be amended at all, the amendment ought to be made by another entry in the body of the book, the date of which would appear.

If it might be done by a marginal note, a surveyor, among whom the greatest speculators were to be found, might, at a late period, have made a young vague entry special, by a marginal note, without a probability of discovery as to the time of the amendment.

The alterations made in this entry by the marginal notes, it was alleged, were two. *First.* As to the beginning. The entry, before it was altered, called for beginning at the Long lick, on the south side of Long lick run, which was altered to east side. And, *Secondly.* In the call of course for quantity, which in the entry unaltered stood south-east, but was changed to north-east.

The entry, as unaltered, called for the Long lick on the south side, to extend up and down the run, to include the ash cabin and marked trees, and to run south-east for quantity.

It ought to have been surveyed on both sides of the run, to run up and down equal distances, and barely to include the objects, and extending to the south-east for quantity.

The manner in which the defendant ought to have been surveyed depended upon the court's opinion as to the proof of the objects.

If the cabin only was established, that ought to have been the center of a square, with lines running to the cardinal points.

If the beech stump was proved to be the stump of the tree on which the letters I R were marked, the center ought to have been half way between those objects.

And if the spring at 10 was proved, the center ought to have been taken between the three objects.

It was said for the complainant in reply : That as no fraud was either charged or proved, as to the amendment of the entry by marginal note, and as the amendment was made by a sworn officer, it would not be presumed.

And if the amendment was fairly made, it operated as well as notice, as if made in the body of the book.

At the last term the following interlocutory decree was pronounced :

Frye *v.* Essry.

By the Court.—It appearing that the entry on which the claim of the defendant is founded, is of prior date to that of the complainant's entry, the first question will be: Has this entry been made as the law requires, and how ought the survey thereon to have been made?

The entry calls for a cabin and cleared land, and a spring running a south-east course, and a beech tree marked I R.

It seems to the court, that the two first calls have been sufficiently identified, and that they were sufficiently notorious when the entry was made to give it validity. But as two beech trees marked I R, at a considerable distance from each other, are [proven, it seems to the court that the last call is too uncertain to be regarded; therefore, the court is of opinion that the survey on this entry should have been made in a right-angled form, and as much longer than wide, as the cabin and spring are distant from each other, and so as to include the spring and cabin at equal distances from the sides and ends thereof in which they are respectively placed. On considering a similar question relative to the entry and survey of the complainant, it seems to the court that all the calls of his entry have been sufficiently identified, and that they were sufficiently notorious when his entry was made; and from inspection of the surveys returned, it seems to the court that the complainant's survey, though it is not made altogether agreeable to entry, does not include more of that part of the defendant's survey, which has been made contrary to entry, nor does it include it, otherwise than it would have done, if it had been made in any other manner to comply with the calls of his entry, taken in consistency with each other, and also in a legal form, so far as these calls would permit. Therefore, the court is of opinion that the complainant ought to recover from the defendant all the land included in his survey, which is included in the defendant's survey, and which will not be included therein when the entry on which it was made, is surveyed as above specified: Whereupon it is decreed and ordered, that the complainant do recover of the defendant all the land which will be included in the survey, when made agreeably to the foregoing opinion, and which is now included within his present survey.

And now at this term, the surveyor's report having been returned, the defendant was decreed and ordered to convey to the complainant the interference, amounting to 20½ acres, and to pay costs.